UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA S. HERRERA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>J. ORTEGA, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-02035 BLF (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES; SETTING BRIEFING SCHEDULE ON REMAINING CLAIMS**<br><br>(Docket No. 29) |

　　　　Plaintiff, a state prisoner proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983. Dkt. No. 1.[1] The Court found that Plaintiff's second amended complaint, Dkt. No. 15, stated cognizable retaliation claims under the First Amendment against six Defendants. Dkt. No. 16 at 7.

　　　　Two of the Defendants, Sgt. M. Valdez and Appeals Examiner G. Bickham, have filed a motion for summary judgment on grounds that Plaintiff failed to exhaust available administrative remedies as to his claims against them. Dkt. No. 29. Plaintiff filed opposition, Dkt. No. 32, and Defendants Valdez and Bickham have replied, Dkt. No. 33.

---

[1] All page references herein are to the Docket pages shown in the header to each document and brief cited, unless otherwise indicated.

For the reasons set forth below, Defendants Valdez and Bickham's motion is **GRANTED**.

## DISCUSSION

I.  **Statement of Facts**[2]

Plaintiff was at all relevant times incarcerated at the Salinas Valley State Prison (SVSP) in Soledad, California. Dkt. No. 1 at 2. Plaintiff alleges a chain of events and related grievances[3] following the placement of an allegedly false confidential memo[4] in his file on December 18, 2018. Dkt. No. 15; Dkt. No. 29-1 at 15, 48. Plaintiff exhausted a grievance appeal regarding the confidential memo, designated as Appeal No. SVSP-19-02852 (the '2852 Grievance).[5] Dkt. No. 15 at 13; Dkt. No. 29-1 at 9, 42. The '2852 Grievance was accepted into the prison tracking system on August 26, 2019. Dkt. No. 29-2 at 5. It was ultimately denied at the third level of review, establishing exhaustion, on November 13, 2019. *Id.*

Defendant Valdez, of the Investigative Services Unit (ISU) at SVSP, interviewed Plaintiff as part of the second level review of Plaintiff's '2852 Grievance. Dkt. No. 29-1 at

---

[2] The following facts are not disputed unless otherwise stated.

[3] Defendants have submitted Plaintiff's grievance records: (1) through the certification of M. Harder of the Office of Appeals (OOC) of the California Department of Corrections and Rehabilitation (CDC), Dkt. No. 29-1 at 2 ¶ 4 & Exh. 2; and also (2) by copy of Plaintiff's responses to co-Defendant J. Ortega's discovery requests, *id.* at 2 ¶ 5 & Exh. 3. These two sets of Plaintiff's grievance records are almost exactly duplicative. For ease of reference, citations to Plaintiff's grievance records cite both sets of the grievance records. Any material differences in the two sets of grievance records are specifically noted.

[4] The confidential memo stated that Plaintiff was involved in the sale of drugs. Dkt. No. 29-1 at 16, 49.

[5] Plaintiff uses the term "602 appeal" in reference to his grievance(s). It is understood that the number "602" refers to the form that inmates use to submit their grievances. *See* Cal. Code Regs. Tit. 14, § 3482(c) (inmates may submit grievances by utilizing Form 602-1). Once the form is completed and submitted by an inmate, prison officials assign a tracking number. Dkt. No. 29-2 at 2 ¶¶ 3-4. The tracking numbers are the ones utilized here.

2

16, 49. The interview occurred sometime prior to issuance of the second level denial on August 2, 2019.[6] *Id.* at 17, 50. Defendant Bickham, who is an Appeals Examiner in the Office of Appeals (OOA) in Sacramento, was the decision-maker who denied the '2852 Grievance at the third and final level of review on November 13, 2019. Dkt. No. 16 at 4; Dkt. No. 29-1 at 9, 42; Dkt. No. 29-2 at 5. Plaintiff alleges that Defendants Valdez and Bickham both ignored a lack of evidentiary support for placing the confidential memo in his file. Dkt. No. 16 at 5 (referencing Dkt. No. 14 at 5). Plaintiff alleges that their roles in the ultimate denial of his '2852 Grievance did not further any legitimate penological goal and were a form of retaliation against him.[7] *Id.*; Dkt. No. 32 at 1-2.

Meanwhile, on September 18, 2019, prison officials accepted a separate grievance in which Plaintiff complained that the four non-moving Defendants (Ortega, Castillo, Duran, and Cardona) had conducted a retaliatory search of Plaintiff's cell. This grievance was designated as Appeal No. SVSP-19-03641 (the '3641 Grievance). Dkt. No. 29-2 at 5; Dkt. No. 32 at 2. The '3641 Grievance was closed by prison administrators as of December 13, 2019. Dkt. No. 29-2 at 5.

---

[6] The actual decision on the second level appeal was issued by M. Atchely, Chief Deputy Warden of SVSP on August 2, 2019. Dkt. No. 29-1 at 17, 50. Atchely is not a party to this lawsuit. It seems Plaintiff may have mistakenly assumed that Defendant Valdez was the second level decision-maker, in addition to being the person who interviewed Plaintiff. Dkt. No. 15 at 7 ("Defendant M. Valdez failed to consider or review the evidence when he denied Plaintiff's 602 appeal at the second level."). Defendants seem to have made a similar assumption. Dkt. No. 29 at 2-3; Dkt. No. 33 at 2. It is thus unclear whether Plaintiff intended to bring suit against Defendant Valdez in Defendant Valdez's actual role as interviewer and/or based on a mistaken belief that Defendant Valdez was also the decision-maker. The Court has analyzed Plaintiff's claim according to the documented record of Defendant Valdez's actual role in the second level appeal process (interviewer, and not decision-maker). Dkt. No. 29-1 at 16-17, 49-50.

[7] All the cognizable claims remaining in this lawsuit are retaliation claims relating to the '2852 Grievance. Dkt. No. 16. However, the retaliation claims against the four non-moving Defendants (Ortega, Castillo, Duran, and Cardona) have an entirely different factual basis. Plaintiff alleges that on June 11, 2019, the four non-moving Defendants searched his cell as retaliation for Plaintiff's refusal to withdraw the '2852 Grievance. Dkt. No. 16 at 2. Plaintiff's retaliation claims against the four non-moving Defendants are unrelated to the issues raised in the motion for summary judgment under consideration here.

3

Plaintiff filed this lawsuit on March 24, 2020.  Dkt. No. 1.  Plaintiff's second amended complaint was filed on April 19, 2021.  Dkt. No. 15.  The second amended complaint is the operative complaint.  *See Saddozai v. Davis*, 35 F.4th 705, 708-10 (9th Cir. 2022) (citations and internal quotation marks omitted).

Defendants Valdez and Bickham filed their motion for summary judgment on June 23, 2022.  Dkt. No. 29.  They argue that Plaintiff is foreclosed from bringing claims against them based on their respective roles in handling the '2852 Grievance because Plaintiff failed to bring (and therefore failed to exhaust) a separate grievance about their allegedly retaliatory motives in the decisions relating to the '2852 Grievance.  *Id*. at 3-4.

Plaintiff's response to this exhaustion argument is bifurcated.  With regard to Defendant Valdez, Plaintiff argues that his third level appeal of the second level decision on the '2852 Grievance effectively brings Defendant Valdez within the ambit of the '2852 Grievance.  Dkt. No. 32 at 1-2.  Plaintiff argues that Valdez "perpetuat[ed] the retaliation." *Id*. at 2.  Plaintiff argues that exhaustion of the '2852 Grievance constitutes exhaustion of administrative remedies against Defendant Valdez.  *Id*. at 1-2.

Defendant Valdez replies that Plaintiff failed to explicitly and specifically describe his issue with Defendant Valdez's second level interview - *i.e.*, that Defendant Valdez had retaliatory motive in conducting the investigative interview.  Dkt. No. 33 at 2.  Defendant Valdez argues that this omission means the issue was not raised nor decided in the context of the '2852 Grievance.  *Id*. (citing Cal. Code Regs. tit. 15, § 3084.2(a) (2011)).  Defendant Valdez further argues that new issues cannot be raised at the second or third level of review and therefore Defendant Valdez's allegedly retaliatory motive could not have been addressed within the parameters of the '2852 Grievance.  *Id*. (citing Cal. Code Regs. tit. 15, § 3084.1(b) (2015-2017)).

With regard to Defendant Bickham, Plaintiff points to his belated and unsuccessful attempt to initiate a grievance against this Defendant.  Dkt. No. 32 at 5-7.  On June 9, 2022, Plaintiff submitted a grievance claiming that Defendant Bickham's decision on the

4

'2852 Grievance was "unethical and illegal" and was taken "in order to retaliate against [Plaintiff] for filing and pursuing 602 appeals." *Id*. at 6-7. The Court will refer to this grievance as the "2022 Attempted Bickham Grievance." Plaintiff cited Defendant Bickham's alleged intentional and blatant disregard for falsified documents, reckless disregard for the truth, and lack of evidence to support the decision. *Id*. at 7. The completed grievance form for the 2022 Attempted Bickham Grievance was apparently forwarded directly to the OOA as of June 27, 2022. *Id*. The OOA wrote to Plaintiff on July 13, 2022, informing him that OOA would not take any further action regarding Defendant Bickham's final decision on the '2852 Grievance. *Id*. at 5.

Plaintiff argues that the OOA's response to the 2022 Attempted Bickham Grievance demonstrates it was impossible to grieve Defendant Bickham's allegedly retaliatory decision. *Id*. at 2. Defendant Bickham responds that Plaintiff's attempt to initiate a grievance against Defendant Bickham was untimely and did not occur until after Plaintiff filed this lawsuit. Dkt. No. 33 at 3-4.

With regard to both Defendants Valdez and Bickham, Plaintiff makes further arguments that: (1) Plaintiff could not have initiated a grievance against Defendants Valdez and Bickham because of timing issues created by his pending '3641 Grievance; and (2) it was not safe for Plaintiff to lodge such a grievance. Dkt. No. 32 at 2-3. Defendants Valdez and Bickham reply that: (1) the existence of any other pending grievance did not prohibit Plaintiff from filing a new and distinct grievance against Defendants Valdez and Bickham; and (2) Plaintiff fails to provide any evidentiary support for his assertion it was not safe for him to initiate a grievance against Defendants Valdez and Bickham. Dkt. No. 33 at 4-5.

**II.   Summary Judgment**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment

5

"against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id*. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the

nonmoving party. *See id*. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001). The court's obligation to view evidence in the light most favorable to the non-movant does not require it to ignore undisputed evidence produced by the movant. *L.F. v. Lake Washington School District*, 947 F.3d 621, 625 (9th Cir. 2020).

### A.    Proper Exhaustion:  Timeliness and Specificity

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An action must be dismissed unless the prisoner exhausted available administrative remedies <u>before</u> he filed suit. *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

But "a prisoner can cure [exhaustion] deficiencies through later filings, regardless of when he filed the original action" because "[e]xhaustion requirements apply based on when a plaintiff files the operative complaint." *Saddozai v. Davis*, 35 F.4th 705, 708 (9th Cir. 2022) (citations and internal quotation marks omitted). Thus, a prisoner who files an original complaint (when he had not exhausted his remedies) and then files an amended complaint (when he had fully exhausted his remedies) satisfies the exhaustion requirement and is not subject to dismissal for lack of exhaustion. *See id.* at 708-10; *see also Rhodes v. Robinson*, 621 F.3d 1002, 1006 (9th Cir. 2010) (amended complaint raising newly exhausted claims which arose after original complaint was filed satisfied exhaustion requirement); *Cano v. Taylor*, 739 F.3d 1214, 1220 (9th Cir. 2014) (amended complaint

7

raising newly exhausted claims which arose before original complaint was filed satisfied exhaustion requirement).

The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). "The text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion." *Id.* at 92. Therefore, the PLRA exhaustion requirement requires proper exhaustion. *Id.* "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91 (footnote omitted). Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones v. Bock*, 549 U.S. 199, 217-18 (2007).

The filing of an untimely grievance or appeal is not proper exhaustion. *See Woodford*, 548 U.S. at 83-84. A prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Id*.

In California state prisons, the current (i.e., post-June 1, 2020) deadline for filing an administrative grievance is 30 calendar days from the date of discovery of the administrative decision or action being complained of is taken. Cal. Code Regs. tit. 15, § 3482(b). Under the regulations in effect before June 1, 2020, the deadline to file an appeal was 15 working days from the date of discovery. *See* Cal. Code regs. tit. 15, § 3084.6(c) (repealed effective June 1, 2020); *Ngo v. Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008) (on remand from Supreme Court) (finding claims unexhausted where filed more than 15 working days after date of decision, *i.e.*, after deadline in former Cal. Code Regs. tit. 15, § 3084.6(c) had passed). A prisoner could not rely on a continuing-violation theory to extend the deadline; the 15-day deadline was measured from the date of the prison decision

8

or action being appealed, not from the date the effects of such decision or action were felt by the inmate. *Id.* at 1109-10.  If the inmate had all the information needed to file a grievance there was no enlargement of the 15-day filing period.  *Harvey v. Jordan*, 605 F.3d 681, 684 (9th Cir. 2010) (distinguishing *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) and finding inmate must grieve claim of excessive force within 15 days of the date force was used, when plaintiff had all the information he needed about the use of force, not 15 days from the date he later discovered he had respiratory problems caused by that use of force).

In *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014), the Ninth Circuit reviewed the district court's 2008 ruling that plaintiff had failed to exhaust available administrative remedies as to an officer not linked to wrongdoing in plaintiff's grievance and noted that neither the PLRA itself nor California regulations required an inmate to name the responsible parties who may ultimately be sued.  *See id.* at 839 (claim properly exhausted where inmate described nature of the wrong and identified defendant as a responding officer).  But as of January 28, 2011, California regulations require that the appeal name "all staff member(s) involved" and "describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(a)(3) (repealed June 1, 2020); *see also* Cal. Code Regs. tit. 15, § 3084.2(c)(2) (effective June 1, 2020) (grievance shall "describe all information known and available to the claimant regarding the claim, including … names and titles of all involved staff members (or a description of those staff members)").

### 1. Defendant Valdez

There is no genuine factual issue as to grievance timeliness with respect to Plaintiff's claim against Defendant Valdez, because Plaintiff never even attempted to initiate a proper grievance against Defendant Valdez.  It is a question of law whether Defendant Valdez can be deemed to be a subject of the '2852 Grievance.  Plaintiff points to no authority for the proposition that any prison official who participated at an earlier stage of a grievance denial has thereby aggrieved the grievant and is automatically

9

included as a target at the next level of the grievance process. This would effectively expand the scope of every grievance at the next level of appeal. Such a proposition cannot be read wholesale into California's grievance procedures.

"Proper exhaustion demands compliance with an agency's… critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91 (footnote omitted). California requires that a proper grievance name the staff member involved and describe their involvement in the issue. Cal. Code Regs. tit. 15, § 3084.2(a)(3) (repealed June 1, 2020); 15 Cal. Code Regs. Tit. 15, § 3084.2(c)(2) (effective June 1, 2020). Plaintiff's argument for implicit inclusion of additional parties as the grievance progresses to the next level conflicts with California's critical procedural rule that staff members be identified (or at least identifiable) at the outset. Moreover, California explicitly prohibits adding new issues, information, or persons at later stages of the grievance process. Cal. Code Regs. tit. 15, § 3084.1(b) (repealed June 1, 2020); Cal. Code Regs. tit. 15, § 3084(d)(4) (effective June 1, 2020).

To comply with California's critical procedural rules, Plaintiff would have had to initiate a separate grievance against Defendant Valdez, describing Defendant Valdez's alleged retaliatory animus in conducting the second level interview. Plaintiff did not lodge a timely grievance against Defendant Valdez, and therefore failed to exhaust a relevant grievance that would support his claims against Defendant Valdez in this lawsuit. This is sufficient reason to grant Defendant Valdez's motion for summary judgment, unless Plaintiff is able to demonstrate that the grievance procedure was unavailable to him.

      2.     **Defendant Bickham**

There is also no genuine factual issue as to the untimeliness of the 2022 Attempted Bickham Grievance. Plaintiff attempted to lodge the 2022 Attempted Bickham Grievance well after both: (1) expiration of the 15 working day time limit then in existence, Cal. Code regs. tit. 15, § 3084.6(c) (repealed June 1, 2020); and also (2) the filing of the operative

10

complaint on April 19, 2021, *Saddozai*, 35 F.4th at 708; *McKinney*, 311 F.3d at 1199. The untimeliness of the 2022 Attempted Bickham Grievance is sufficient reason to grant Defendant Bickham's motion for summary judgment, unless Plaintiff is able to demonstrate that the grievance procedure was unavailable to him.

### B. Exhaustion of "Such Administrative Remedies As Are Available"

"Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 US. 632, 642 (2016) (alteration in original); *see Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017) (per curiam).

There are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* (offering as an example a prison handbook "directing inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions"). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* at 643-44 (offering as an example a situation where "some mechanism exists to provide relief, but no ordinary person can discern or navigate it"). Third, an administrative remedy is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644 (citing appellate court cases addressing "a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures").

The Supreme Court in *Ross* only describes the above categories as "three kinds of circumstances," *id.* at 643, and does not suggest that they are exclusive. For example, "[w]hen prison officials improperly fail to process a prisoner's grievance, the prisoner is

11

deemed to have exhausted available administrative remedies." *Andres*, 867 F.3d at 1079 (prisoner filed grievance in January 2013 and officials had not responded by December 2014, when prisoner filed his federal civil rights claim).

The threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable and thereby excuse a prisoner's failure to exhaust administrative remedies. *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). "To show that a threat rendered the prison grievance system unavailable, a prisoner must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance." *Id.* at 987. "If the prisoner makes this showing, he must then demonstrate that his belief was objectively reasonable. That is, there must be some basis in the record for the district court to conclude that a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." *See id.* at 987-88 (in an excessive force suit, prisoner's allegations that the guards threatened him after the beating by saying he was "lucky" because his injuries "could have been much worse" failed to meet the objective prong because an inmate would not have reasonably understood from the statements that the guards intended to retaliate for his filing a grievance).

If prison officials improperly screen out an inmate's appeals, the inmate cannot properly complete the grievance process and administrative remedies are effectively unavailable. *Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010). To satisfy this exception to exhaustion, an inmate must show: "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id.* at 823-24.

///

### 1. Defendant Valdez

With respect to Defendant Valdez, Plaintiff simultaneously argues that: (1) Plaintiff's exhausted '2852 Grievance implicitly encompasses Defendant Valdez because of Defendant Valdez's role (interviewer) at the second level review of the '2852 Grievance; and yet (2) Plaintiff could not bring a grievance against Defendant Valdez either because of timelines that conflicted with Plaintiff's other pending grievances, or because it was unsafe to do so. Hence, the argument is both that Plaintiff did exhaust a grievance, but also that he could not exhaust a grievance. Plaintiff's argument fails on both points.

First, as discussed above, Plaintiff simply failed to initiate and exhaust a grievance that could serve as prerequisite for a claim against Defendant Valdez.[8] Second, Plaintiff fails to demonstrate any circumstance making the grievance process unavailable to him. Indeed, Plaintiff's grievance records indicate that during the time the '2852 Grievance was pending its final resolution (between August 26, 2019 and November 13, 2019) Plaintiff initiated two other grievances, including the '3641 Grievance. Dkt. No. 29-2 at 5. During the time the '3641 Grievance was pending (between September 18, 2019 and December 13, 2019) Plaintiff initiated two more grievances. *Id.* Plaintiff clearly had an available administrative remedy but failed to avail himself of it.

Finally, Plaintiff's argument that it was not safe for him to initiate a grievance against Defendant Valdez is conclusory in the extreme. Plaintiff does not describe any realistic safety concern, especially in light of the fact that he was actively pursuing multiple grievances during the relevant time period. *See McBride*, 807 F.3d at 987.

Plaintiff has not shown a genuine issue as to whether he had an available

---

[8] Such a grievance might have alleged, for example, that Defendant Valdez conducted the investigative interview in a manner that demonstrated retaliatory animus. *See* Cal. Code Regs. tit. 15, § 3084.2(a)(3) (repealed June 1, 2020) (grievance should identify the staff member and describe his involvement).

administrative remedy against Defendant Valdez and whether he simply failed to avail himself of it.

### 2. **Defendant Bickham**

With respect to Defendant Bickham, Plaintiff simultaneously argues that: (1) the 2022 Attempted Bickham Grievance proves that he did not have an available administrative remedy against Defendant Bickham; and also (2) Plaintiff could not bring a grievance against Defendant Bickham either because of timelines that conflicted with Plaintiff's other pending grievances, or because it was unsafe to do so. Plaintiff's argument fails on both points.

Over a year after Plaintiff filed the operative complaint, and some 32 months after the '2852 Grievance was finally decided by Defendant Bickham, the OOA refused Plaintiff's attempt to revisit the '2852 Grievance and consider whether Defendant Bickham had been motivated by retaliatory animus as of his November 13, 2019 third level grievance decision. Dkt. No. 32 at 5. The OOA informed Plaintiff that its previous decision "concludes this matter" and "[a]t this time, no further action will be taken." *Id.*

Plaintiff has failed to demonstrate that a timely grievance against Defendant Bickham would have been similarly refused by prison administrators. OOA's July 13, 2022 response to Plaintiff fails to create a genuine issue as to whether a timely complaint, within 15 working days of Defendant Bickham's November 13, 2019 third level disposition of the '2852 Grievance, would have been rejected by the OOA. The extreme untimeliness of the 2022 Attempted Bickham Grievance is the overriding consideration. Plaintiff has not shown he could not have grieved against Bickham's alleged retaliatory motive, had Plaintiff done so in a timely manner. Plaintiff fails to demonstrate that a timely grievance would have been a dead end, or that procedures were so opaque as to be inaccessible to him, or that he would have been thwarted by prison officials, or that there were other circumstances making the grievance procedure unavailable, had Plaintiff lodged an applicable grievance against Defendant Bickham in the prescribed time frame.

14

*See Ross*, 578 U.S. at 643-44.

Plaintiff makes the same arguments about conflicting timelines, and that it was not safe to lodge a grievance. These arguments are equally unconvincing when applied to Defendant Bickham, for the same reasons they do not convince when applied to Defendant Valdez. Plaintiff was actively filing other grievances in the relevant time period, and Plaintiff has not described any realistic safety concern. *See McBride*, 807 F.3d at 987.

### C. Failure to Exhaust Is an Affirmative Defense

The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc); *see id.* at 1176 (reversing district court's grant of summary judgment to defendants on issue of exhaustion because defendants did not carry their initial burden of proving their affirmative defense that there was an available administrative remedy that prisoner plaintiff failed to exhaust); *see also Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005) (as there can be no absence of exhaustion unless some relief remains available, movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting results of relief already granted as result of that process). Once the defendant has carried that burden, the prisoner has the burden of production. *Albino*, 747 F.3d at 1172. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id.* But as required by *Jones*, the ultimate burden of proof remains with the defendant. *Id.*

A prisoner must provide evidence, not just make conclusory allegations, to meet his burden to show that existing and generally available administrative remedies were effectively unavailable. *See Draper v. Rosario*, 836 F.3d 1072, 1079-80 (9th Cir. 2016). A prisoner's "unsupported allegations" regarding impediments to exhaustion are insufficient to create a triable issue of fact. *Id.* (plaintiff's statements that prison officials

15

had "engaged in impeding and unethical conduct of obstructing" his inmate appeals "from being exhausted in a timely manner," and had "prohibited and impeded" his efforts to exhaust were insufficient to create a triable issue because the prisoner did not explain what kinds of impeding and unethical conduct occurred).

For the reasons described above, Defendants Valdez and Bickham have shown that Plaintiff had available administrative remedies, and that Plaintiff did not exhaust the available administrative remedies. *Albino*, 747 F.3d at 1172. Plaintiff has failed to come forward with evidence showing something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id.* Plaintiff's conclusory and unsupported allegations are insufficient to create a triable issue of fact, as to either Defendant Valdez or Defendant Bickham. *Draper*, 836 F.3d at 1079-80.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds there exists no genuine issue as to any material fact regarding Plaintiff's failure to exhaust available administrative remedies. Plaintiff's allegations and arguments are not sufficiently probative to warrant denial of Defendants Valdez's and Bickham's motion for summary judgment. *See Liberty Lobby*, 477 U.S. at 249-50. Based on the foregoing, the Court must grant summary judgment in favor of Defendants Valdez and Bickham.

## CONCLUSION

For the reasons stated above, the Court orders as follows:

1. Defendants Valdez and Bickham's motion for summary judgment is **GRANTED**. Dkt. No. 29. The claims against them are **DISMISSED** for failure to exhaust administrative remedies. The Clerk shall terminate these two Defendants from this action.

2. This action shall proceed on the remaining claims against Defendants Ortega, Castillo, Duran, and Cardona. **No later than fifty-six (56) days from the date this order is filed**, Defendants shall file a dispositive motion or notice indicating that the

claims against them cannot be resolved by such a motion.

If Defendants Ortega, Castillo, Duran, and Cardona file a dispositive motion, Plaintiff's opposition shall be filed with the Court and served on Defendants **no later than twenty-eight (28) days** from the date Defendants' motion is filed.

3. Defendants <u>shall</u> file a reply **no later than fourteen (14) days** after the date on which Plaintiff's opposition is filed.

4. All other relevant portions of the Court's September 23, 2021 Order of Partial Dismissal and of Service, Dkt. No. 16, shall remain in effect.

This order terminates Docket No. 29.

**IT IS SO ORDERED.**

Dated:  __February 27, 2023____

BETH LABSON FREEMAN
United States District Judge

Order Granting Defs.' MSJ (exh); Briefing Sched
PRO-SE\BLF\CR.20\02035Herrera_grant-msj(exh)&brief

17