UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA S. HERRERA,<br><br>    Plaintiff,<br><br>    v.<br><br>J. ORTEGA, et al.,<br><br>    Defendants. | Case No. 20-cv-02035 BLF<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING TO SETTLEMENT PROCEEDINGS; STAYING CASE; INSTRUCTIONS TO CLERK**<br><br>(Docket No. 37) |

    Plaintiff, a state prisoner, filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against prison staff at Salinas Valley State Prison ("SVSP") and an appeals examiner at the Office of Appeals. The Court found the second amended complaint ("SAC"), Dkt. No. 15, stated a cognizable claim for retaliation, and ordered Defendants Lt. J. Ortega, Officer R. Castillo-Ruiz,[1] Officer B. Duran, and Officer R. Cardona to file a motion for summary judgment or other dispositive motion. Dkt. No. 16.[2]

---

[1] Plaintiff originally identified this Defendant as "Castillo," but Defendants' filings indicate that the proper name is "Castillo-Ruiz." *See, e.g.*, Dkt. Nos. 18, 19.

[2] Defendants Sgt. M. Valdez and G. Bickham filed a separate motion for summary judgment to dismiss the claims against them for failure to exhaust administrative remedies. Dkt. No. 29. After the matter was fully briefed, the Court granted summary judgment in their favor and dismissed the claims against them. Dkt. No. 34. The Clerk was directed to

Defendants filed a motion for summary judgment pursuant to Rule 56 on the grounds that there is no genuine issue as to any material fact on the retaliation claim against them, they are entitled to judgment as a matter of law, and they are entitled to qualified immunity. Dkt. No. 37. In support, Defendants filed declarations and exhibits.[3] *Id.* Plaintiff filed opposition, Dkt. No. 40, along with a declaration and exhibits in support, Dkt. No. 40-1. Defendants filed a reply. Dkt. No. 42.

For the reasons stated below, Defendants' motion for summary judgment is **DENIED**.

## DISCUSSION

### I.     Statement of Facts[4]

In May 2019, Plaintiff learned of a confidential memorandum placed in his central file. Herrera Dep. 9:13-25, 10:1-13; Dkt. No. 37-4. This confidential memorandum was authored in December 2018, by Defendant Castillo-Ruiz in his capacity as an Assistant Security Threat Group Investigator in the Investigative Service Unit ("ISU") at SVSP. Castillo-Ruiz Decl. ¶¶ 4-5, Dkt. No. 37-2. Defendant Castillo-Ruiz's role includes investigating the following: criminal activity within the institution, inmates for introduction and possession of contraband, and inmates' Security Threat Group ("STG") status. *Id.* at ¶ 4. The confidential memorandum identified Plaintiff as an individual

---

terminate these two Defendants from the action. *Id.* at 16.

[3] In support of their summary judgment motion, Defendants submit the declarations of Defendant Officer Cardona, Dkt. No. 37-1, Defendant Officer Castillo-Ruiz, Dkt. No. 37-2, Defendant Officer Duran, Dkt. No. 37-3, Deputy Attorney General Peter B. Nichols, Dkt. No. 37-4, along with exhibits, and Defendant Lt. Ortega, Dkt. No. 37-5. The exhibits attached to the declaration of Mr. Nichols include excerpts from the transcript of Plaintiff's deposition taken on April 21, 2022 (Ex. 1), a copy of Plaintiff's Inmate Appeals Tracking System, level I and II from September 24, 2015 through April 22, 2020 (Ex. 2), and a copy of Plaintiff's Offender Grievances/Appeals log from June 17, 2020 to September 2021 (Ex. 3). Dkt. No. 37-4.

[4] The following facts are not disputed unless otherwise stated.

2

selling controlled substances at SVSP, and according to Defendant, was deemed reliable under Cal. Code Regs. tit. § 3321(c)(2-4). *Id.* at ¶ 5. Plaintiff filed an inmate appeal, designated as SVSP-19-02852, asserting that the information was false and requesting staff remove the confidential memorandum from his file. *Id.* at ¶ 6.

At the time, Defendants Cardona and Duran were assigned as Investigative Service Unit ("ISU") Squad Officers at SVSP. Cardona Decl. ¶ 4, Dkt. No. 37-1; Duran Decl. ¶ 4, Dkt. No. 37-3. In those roles, Defendants conduct investigations into criminal activity, including possession of contraband and narcotics, within the institution. *Id.* Defendant Ortega was an ISU Lieutenant, who prepares reports, interview witness or suspects, and supervise ISU Correctional Sergeants who in turn supervise ISU Correctional Officers. Ortega Decl. ¶ 2, Dkt. No. 37-5. In this case, Defendant Ortega was assigned to investigate an inmate grievance at the first level. *Id.*

On June 11, 2019, Defendant Ortega interviewed Plaintiff regarding SVSP-19-02852, in the Facility B Program Office; Defendants Cardona, Castillo-Ruiz, and Duran were also present. Dkt. No. 15 at 3; Ortega Decl. ¶ 3; Cardona Decl. ¶ 5, Dkt. No. 37-1 at 2; Castillo-Ruiz ¶¶ 7-8. According to Defendants, it is common practice for more than one staff member to be present during an appeal interview so that officers familiarize themselves with the issues and gain experience. Duran Dec. ¶ 6. During the interview, Plaintiff claimed that the information about him selling narcotics in the confidential memorandum was false, and he requested that the memorandum be removed from his file. Cardona Decl. ¶ 6; Duran Decl. ¶ 7; Ortega Decl. ¶ 5. Defendant Castillo-Ruiz explained to Plaintiff that he was the one who wrote the confidential memorandum and that it met statutory guidelines for reliability. Castillo-Ruiz Decl. ¶ 10. Defendant Ortega explained that the confidential memorandum could not be removed from his file. Ortega Decl. ¶ 7.

According to Plaintiff, Defendants attempted to intimidate him into withdrawing the appeal. Dkt. No. 15 at 3-4. He also asserts that Defendant Ortega went so far as to fill out

3

the portion of the appeal to withdraw it and then became agitated when Plaintiff refused. Herrera Decl. ¶ 4, Dkt. No. 40-1 at 2.  Defendant Ortega repeatedly asked Plaintiff whether he would withdraw the appeal, and Plaintiff continued to refuse.  *Id.*  Defendant Ortega finally responded, "Then we're going to hit your house," and then all the Defendants proceeded to the building to search Plaintiff's cell.  *Id.*  Plaintiff states that during the interview and search, he felt "threatened and intimidated by Defendants." *Id.* at ¶ 9.  In support, Plaintiff submits the declarations of two inmates who attest that they could see Defendants sitting with Plaintiff at the table (presumably during the interview) and that it "looked like they were trying to intimidate him."  Dkt. No. 40-1 at 36, 37.

According to Defendants, no one requested Plaintiff withdraw his grievance. Cardona Decl. ¶ 7; Castillo-Ruiz Decl. ¶ 11; Duran Decl. ¶ 9; Ortega Decl. ¶ 8. Defendants also assert that Plaintiff suggested that they search his cell to demonstrate he had no narcotics, stating: "you guys can go search my cell, I don't have anything to hide." Ortega Decl. ¶ 9; Castillo-Ruiz Decl. ¶ 12; Duran Decl. ¶ 8; Cardona Decl. ¶ 8. Defendants Ortega, Cardona, Castillo-Ruiz, and Duran conducted the cell search; Defendant Cardona wrote out the cell search receipt.  Cardona Decl. ¶ 9; Castillo-Ruiz ¶ 13; Duran Decl. ¶ 11.  The search was negative for contraband and narcotics and documented as such.  Duran Decl. ¶ 11; Ortega ¶ 10.  A notebook was confiscated to investigate whether it contained any STG information; it was later returned to Plaintiff. Duran Decl. ¶ 11.

In his declaration, Plaintiff denies inviting or suggesting that Defendants search his cell.  Herrera Decl. ¶ 3, Dkt. No. 40-1 at 2.  He also states that Defendant Castillo told him that he was going to make copies of Plaintiff's notebook and show it to the "Board and hope they deny me."  *Id.* at ¶ 10.  The declaration of three inmates state that they also overheard Defendant Castillo state that he hoped the Board denies Plaintiff.  Dkt. No. 40-1 at 36-38.  Plaintiff states that C.O. Mariscal, who was in the control booth for 5 Block, told

4

him later that Defendant Castillo-Ruiz had given him a copy of Plaintiff's notebook. Herrera Decl. ¶ 10.

Plaintiff states that out of fear of further retaliation, he did not pursue a 602 appeal on another "false 1030" (another confidential memorandum regarding drugs) in his file. *Id.* at ¶ 11; Dkt. No. 15 at 5. Plaintiff did pursue a 602 appeal for SVSP-19-02852, challenging the false memorandum to the third level, exhausting administrative remedies. Herrera Dep. 11:3-7, 35:11-16, 35:14-16 (Ex. 1). Plaintiff also filed inmate grievance, CDCR Form 602, Log No. 19-03642, and appealed that grievance to the third level. Herrera Dep. 35:11-13. According to Defendants, Plaintiff's file indicates he filed 16 inmate grievances after SVSP-19-02852 and before September 2021. *Id.*, citing Nichols Decl. ¶ 4, Ex. 2; ¶ 5, Ex. 3. However, it is unclear from their exhibits how Defendants arrived at that number. *See* Exs. 2, 3.

Based on his allegations, the Court found Plaintiff stated a cognizable claim against Defendants Ortega, Castillo-Ruiz, Duran, and Cardona for the retaliatory cell search. Dkt. No. 16 at 3.

## II. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted); Fed. R. Civ. P. 56(e). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corporation Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id*. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A. Retaliation

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

The adverse action in the first element of a retaliation claim need not independently deprive the plaintiff (prisoner or not) of a constitutional right. *See, e.g.*, *Mt. Healthy*, 429 U.S. at 283 (absence of right to continued employment does not defeat claim for retaliatory firing for First Amendment expression); *see also Vignolo v. Miller*, 120 F.3d 1075, 1078

7

(9th Cir. 1997) (discharge from prison job for refusal to waive constitutional right states retaliation claim despite no constitutional right to prison job); *Franco v. Kelly*, 854 F.2d 584, 585-86 (2d. Cir. 1988) (false disciplinary charges filed against prisoner for cooperating with state investigation states retaliation claim despite no right to be free from false charges). Harm that "would chill a 'person of ordinary firmness' from complaining" is sufficient. *Shepard v. Quillen*, 840 F.3d 686, 691 (9th Cir. 2016) (quoting *Rhodes*, 408 F.3d at 569) (placement in administrative segregation or even threat do so on its own amounts to adverse action satisfying the first element). The mere threat of harm can be a sufficiently adverse action to support a retaliation claim. *Id.* at 688-89; *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009).

With regard to the fourth *Rhodes* element, a prisoner must at least allege that he suffered harm, since harm that is more than minimal will almost always have a chilling effect. *Rhodes*, 408 F.3d at 567-68 n.11; *see Gomez v. Vernon*, 255 F.3d 1118, 1127-28 (9th Cir. 2001) (prisoner alleged injury by claiming he had to quit his law library job in the face of repeated threats by defendants to transfer him because of his complaints about the administration of the library). The prisoner need not demonstrate a <u>total</u> chilling of his First Amendment rights in order to establish a retaliation claim. *See Rhodes*, 408 F.3d at 568-69 (rejecting argument that inmate did not state a claim for relief because he had been able to file inmate grievances and a lawsuit). That a prisoner's First Amendment rights were chilled, though not necessarily silenced, is enough. *Id.* at 569 (destruction of inmate's property and assaults on the inmate enough to chill inmate's First Amendment rights and state retaliation claim, even if inmate filed grievances and a lawsuit).

With regard to the fifth *Rhodes* element, the prisoner bears the burden of pleading and proving absence of legitimate correctional goals for the conduct of which he complains. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). At that point, the burden shifts to the prison official to show, by a preponderance of the evidence, that the retaliatory

8

action was narrowly tailored to serve a legitimate penological purpose. *See Schroeder v. McDonald*, 55 F.3d 454, 461-62 (9th Cir. 1995). Prison officials cannot simply articulate a general justification for their actions, they must show why their particular action was reasonably related to the legitimate interest. *Shepard*, 840 F.3d at 692 (defendants must show that they placed plaintiff in administrative segregation because there were witnesses in general population whom he could have improperly influenced; not enough to simply assert that administrative segregation generally helps keep prisoners safe and investigations untainted). Courts must also consider whether there were ready alternatives to the retaliatory action for achieving the governmental objectives. *Brodheim*, 584 F.3d at 1272.

Defendants assert that Plaintiff cannot prevail on his retaliation claim because the undisputed facts essentially fail to support two of the *Rhodes* elements: their actions did not actually chill Plaintiff's First Amendment rights, and the cell search advanced legitimate correctional goals and was not retaliatory because it was directed at investigating reliable information related to the sale of narcotics. Dkt. No. 5, 6-7. In opposition, Plaintiff asserts that the fact that he filed other appeals is not evidence that the exercise of his rights was not "chilled." Dkt. No. 40 at 1. He also challenges Defendants' argument that the cell search advanced a correctional goal as "lack[ing] fundamental merit and factual basis." *Id.* at 2. He questions the reliability of the confidential memorandum and asserts that he was never "questioned or tested" about the information therein prior to his filing a grievance on the matter. *Id.* at 3. Plaintiff also challenges the fact that the confidential memorandum was written six months before the cell search, and that during that time, there was otherwise no search or investigation. *Id.* at 3. In reply, Defendants assert that the reliability of the confidential memorandum was addressed during the appeal process, and that there was no reason to believe that a cell search six months after receiving the confidential memorandum would be unproductive. Dkt. No. 42 at 3.

9

Accordingly, Defendants assert that the search did advance legitimate correctional goals. *Id.*

After viewing all the evidence submitted in the light most favorable to Plaintiff, the Court finds there exist genuine issues of material facts with respect to Plaintiff's claim that Defendants conducted a retaliatory cell search in response to his filing an inmate grievance challenging a confidential memorandum in his file. In response to Defendants' assertion that undisputed facts fail to support his claim, Plaintiff has submitted evidence showing that there are specific facts indicating genuine issues for trial. *See Celotex Corp.*, 477 U.S. at 324.

First of all, Defendants attempt to show that Plaintiff's exercise of his First Amendment rights were not actually chilled because he went ahead and exhausted the challenged grievance through the final level of appeal. However, a total chilling of his First Amendment rights is not required for a Plaintiff to establish a retaliation claim, as Plaintiff points out in opposition. *See Rhodes*, 408 F.3d at 568-69. It is enough that his First Amendment rights were chilled though not necessarily silenced. *Id.* at 569. Here, Plaintiff states that he was intimidated enough not to pursue a 602 appeal on another confidential memorandum in his file. *See supra* at 5. This is sufficient to satisfy the fourth *Rhodes* element.

Defendants also assert that the cell search was not retaliatory because Plaintiff "suggested" that they search his cell and it advanced legitimate correctional goals. *See supra* at 4. In response to Defendants' declarations that he invited them to search his cell, Plaintiff has his own declaration denying their assertion. Whether or not Plaintiff invited the search is a material fact on the issue of whether it was retaliatory, and the Court cannot make credibility determinations or weigh this conflicting evidence with respect to this material fact. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630. Rather, it must be viewed in the light most favorable to Plaintiff as the nonmoving party. *Id.* at 631. Furthermore,

10

although all four Defendants assert that no one asked Plaintiff to withdraw his appeal, several inmates' declarations corroborate Plaintiff's allegation that the Defendants outnumbered him and together intimidated him. *See supra* at 4-5. Plaintiff's declaration and the declaration of other inmates is sufficient to designate specific facts showing that there is a genuine issue for trial, *i.e.*, whether Defendants searched Plaintiff's cell because of the exercise of his First Amendment rights. *Celotex Corp.*, 477 U.S. at 324. Also viewing the evidence in the light most favorable to Plaintiff, it cannot be said that a cell search conducted six months *after* the confidential memorandum was authored and *after* Plaintiff complained about it served legitimate correctional goals, as Defendants assert. If the confidential memorandum already established that Plaintiff was dealing narcotics, Defendants fail to explain the need to conduct further investigations. Viewing the facts and the inferences drawn from those facts in the light most favorable to Plaintiff, such a proffered correctional goal appears pretextual rather than legitimate.

Based on the foregoing, the Court finds Plaintiff has shown that there remain genuine issues of material fact to preclude summary judgment in favor of Defendants with respect to the retaliation claim against them. *See Celotex Corp.*, 477 U.S. at 324. Accordingly, Defendants are not entitled to judgment as a matter of law. *Id*.

### B. Qualified Immunity

Defendants asserts in the alternative that they are entitled to qualified immunity which bars liability. Dkt. No. 37 at 7.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law;'" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given

situation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

A right is clearly established if it were "sufficiently clear [at the time of the conduct at issue] that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). "The right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority." *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019). If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. *Saucier*, 533 U.S. at 202.

A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by *Saucier*, 533 U.S. at 194); *Henry A.*, 678 F.3d at 1000 (qualified immunity analysis requiring (1) determining the contours of the clearly established right at the time of the challenged conduct and (2) examining whether a reasonable official would have understood that the challenged conduct violated such right). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *See Pearson*, 555 U.S. at 236 (noting that while the *Saucier* sequence is often appropriate and beneficial, it is no longer mandatory). "[U]nder either prong, courts

may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must, as in other cases, view the evidence in the light most favorable to the non-movant. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992). The defendant bears the burden of establishing that his actions were reasonable, even if he violated the plaintiff's constitutional rights. *White v. Pauly*, 137 S. Ct. 548, 552 (2017).

In considering whether a defendant is entitled to qualified immunity against a retaliation claim, it is improper to consider the harm eventually caused by the official's conduct. *Rhodes*, 408 F.3d at 569-70. The qualified immunity inquiry must focus on the time of the conduct – i.e., whether the officer's acts were reasonable in light of the information he possessed at the time he acted – rather than its aftermath and effect because no officer can observe whether his retaliation has successfully chilled a prisoner's rights until long after deciding to act. *Id.* at 570.

Defendants assert that Plaintiff "cannot identify any controlling precedent sufficient to put them on notice that conducting a cell search, following an interview into an inmate's grievance on the validity of information about narcotic sales, constitutes retaliation for First Amendment-protected expression." Dkt. No. 37 at 8. Defendants also assert Plaintiff cannot identify "any controlling precedent, sufficient to put every correctional officer or ISU officer on notice, that a cell search would chill the exercise of First Amendment rights by a prisoner of ordinary firmness." *Id.*

In opposition, Plaintiff asserts that Defendants' argument is not compelling, as they would have the Court believe that "Defendants were unaware that retaliation, threats, and intimidation are illegal, a violation of policy, and a violation of Plaintiff's rights." Dkt. No. 40 at 3-4. Plaintiff asserts that retaliation for exercising his constitutional rights is

13

"undeniably well known and clearly established to be unlawful." *Id.* at 4.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds Defendants are not entitled to qualified immunity. First of all, Defendants are simply incorrect in arguing that there is no controlling precedent putting them on notice about their specific conduct. It is not necessary that a prior decision rule "the very action in question" unlawful for a right to be clearly established. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016) (plaintiff need not find a case with identical facts, but the farther away existing precedent lies the more likely that the official's acts fall within that vast zone of conduct that is constitutional). Instead, existing precedent must have placed the constitutional question beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Ohlson v. Brady*, 9 F.4th 1156, 1166-67 (9th Cir. 2021) (no directly on point case is required, but the constitutional question must be beyond debate.) Here, Plaintiff's right to freely exercise his First Amendment rights without retaliation under *Rhodes*, 408 F.3d at 567-68, is clearly established such that it was sufficiently clear at the time of cell search that every reasonable official would have understood that what he is doing violates that right. *Taylor*, 135 S. Ct. at 2044.

Secondly, Defendants have failed to establish that their conduct was reasonable. Viewing the evidence in the light most favorable to Plaintiff, Defendants are alleged to have conducted a retaliatory cell search in response to Plaintiff's refusal to withdraw an inmate grievance. At the time of this alleged conduct, it was sufficiently clear that every reasonable official would have understood that he may not take adverse action against an inmate for exercising his First Amendment rights, including filing inmate grievances. *Rhodes*, 408 F.3d at 567-68. Therefore, it cannot be said that a reasonable officer in Defendants' position would have understood that it was lawful to attempt to intimidate Plaintiff into withdraw his grievance and then search his cell in retaliation when he refused to do so. In other words, in light of clearly established principles at the time of the

incident, it cannot be said that Defendants could have reasonably believed that their conduct was lawful. *See Rhodes*, 408 F.3d at 569-70. Accordingly, Defendants' motion based on qualified immunity is DENIED.

### III. Referring Case to Settlement Proceedings

The Court has established a Pro Se Prisoner Settlement Program under which certain prisoner civil rights cases may be referred to a neutral Magistrate Judge for settlement. In light of the existence of triable issues of fact as to whether Defendants violated Plaintiff's rights, the Court finds the instant matter suitable for settlement proceedings. Accordingly, the instant action will be referred to a neutral Magistrate Judge for mediation under the Pro Se Prisoner Settlement Program.

### CONCLUSION

For the reasons stated above, the Court orders as follows:

1. Defendants D Lt. J. Ortega, Officer R. Castillo-Ruiz, Officer B. Duran, and Officer R. Cardona's motion for summary judgment is **DENIED**. Dkt. No. 37.

2. The instant case is **REFERRED** to Judge Robert M. Illman pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the claims in this action, as described above. The proceedings shall take place **within ninety (90) days** of the filing date of this order. Judge Illman shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within ten (10) days after the conclusion of the settlement proceedings, file with the court a report regarding the prisoner settlement proceedings.

3. Other than the settlement proceedings ordered herein, and any matters Magistrate Judge Illman deems necessary to conduct such proceedings, this action is hereby **STAYED** until further order by the court following the resolution of the settlement proceedings.

15

4. The Clerk shall send a copy of this order to Magistrate Judge Illman in Eureka, California.

This order terminates Docket No. 37.

**IT IS SO ORDERED.**

Dated: ___November 14, 2023_____

_____
BETH LABSON FREEMAN
United States District Judge

Order Granting MSJ
PRO-SE\BLF\CR.20\02035Herrera_denyMSJ.refer-Illman

16